**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Aldrete,<br><br>             Plaintiff,<br><br>v.<br><br>Metro Auto Auction LLC, et al.,<br><br>             Defendants. | No. CV-21-00622-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Metro Auto Defendants'[1] Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, (Doc. 20.), to which Plaintiff responded, (Doc. 25), and Metro Auto Defendants replied, (Doc. 38). Also pending before the Court is Defendant BHA's[2] Motion to Dismiss, (Doc. 32), which has likewise been fully briefed, (see Docs. 43; 47). Having considered the parties briefing and relevant caselaw, the Court will grant Metro Auto Defendants' Motion and will refer Defendant BHA's Motion to arbitration for the reasons explained below.

**I.      BACKGROUND**

Metro Auto is a Delaware limited liability company and has been doing business in Arizona as "Metro Auto Auction of Phoenix" since 2005. (*See* Doc. 20 at 2.) In 2009,

---

[1] Metro Auto Defendants means Metro Auto Auction, LLC ("Metro Auto") and Raymond Kurz.
[2] BHA means BH Automotive, LLC, which is a sister company to Metro Auto—both companies being owned by Berkshire Hathaway Automotive, Inc., who is another named defendant in this suit. (*See* Doc. 32 at 2.)

Metro Auto hired Plaintiff, who worked as a Service Coordinator for a portion of her employment with Metro Auto. (*Id.*) Defendant Kurz—an agent of Metro Auto—served as Plaintiff's supervisor for a portion of Plaintiff's employment with Metro Auto. (*Id.*) Plaintiff's employment with Metro Auto ended in 2020. (Doc. 16 at ¶¶ 25–26, 31.) Plaintiff now alleges discrimination, retaliation, and a hostile work environment under Title VII of the Civil Rights Act ("Title VII"); interference and retaliation under the Fair Labor Standards Act ("FLSA"); interference and retaliation under the under the Family and Medical Leave Act ("FMLA"); and state law claims for invasion of privacy, intrusion upon seclusion, public disclosure of private affairs, and intentional infliction of emotional distress. (*See* Doc 16.)

When Plaintiff began her employment with Metro Auto, she signed a "Mutual Agreement to Arbitrate Claims" (the "Arbitration Agreement"). (Doc. 20-2 at 1, 11.) The Arbitration Agreement provides that Metro Auto and Plaintiff "will resolve by arbitration all statutory, contractual and common law claims or controversies, past, present, or future, that arise out of or relate to the Employee's hiring, employment, or termination of employment by the Company." (*Id.* at 4.) "The Company" includes its agents, thus covering Defendant Kurz. (*Id.*) Additionally, the following are claims covered by the agreement:

- [C]laims of discrimination, harassment, or retaliation under any federal, state or local statute or ordinance, including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act;
- claims for retaliation under state workers' compensation law or any "whistleblower" law;
- claims for breach of contract or covenant (express or implied);
- tort claims (including but not limited to, negligent or intentional injury, invasion of privacy, defamation, and tortious inference with contract);
- . . . .
- claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance;
- claims or disputes regarding this Agreement, including but not limited to, its enforceability, scope or terms; and
- disputes regarding arbitrability under this Agreement.

(*Id.* at 4–5.)

For a party to bring a claim covered by the Arbitration Agreement, they must: (1) provide written notice to the opposing party demanding arbitration of that claim; and (2) notify the American Arbitration Association ("AAA") that an arbitration demand was made. (*See id.* at 6.) The Arbitration Agreement also provides that the parties' arbitration "shall be in accordance with" the AAA's "National Rules for the Resolution of Employment Disputes" in effect when the arbitration demand is made. (*Id.*)

The existence of the Arbitration Agreement notwithstanding, Plaintiff filed her amended complaint with the Court in July of 2021. (Doc. 16.) Consequently, Metro Auto Defendants filed a Motion to Compel Arbitration. (Doc. 20.)

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable except upon grounds that exist at common law for the revocation of a contract."  9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (discussing the liberal federal policy favoring valid arbitration agreements).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "The court's role is to answer two gateway questions: does a valid agreement to arbitrate exist, and does the agreement encompass the dispute at issue."  *Adams v. Conn Appliances Inc.*, No.  CV-17-00362-PHX-DLR, 2017 WL 3315204, at *1 (D. Ariz. Aug. 2, 2017) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  If so, the court must compel arbitration.  *Id.*

"Where a contract contains an arbitration clause, courts apply a presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable."  *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed.Appx. 740, 742 (9th Cir. 2012).  However, state law is not entirely displaced from federal arbitration analysis because "generally applicable contract

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 936-37 (9th Cir. 2001) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996)).

### III. ANALYSIS

Metro Auto Defendants argue that the Arbitration Agreement is a valid agreement—within the scope of the FAA—and that Plaintiff's claims are covered under the agreement; therefore, they contend that the arbitral forum, and not this Court, is the proper place for addressing Plaintiff's claims. (*See* Doc. 20 at 6–8.) Conversely, Plaintiff argues that the Arbitration Agreement is both procedurally and substantively unconscionable and, therefore, unenforceable. (Doc. 25 at 1–2.) Accordingly, the Court will first address the validity of the Arbitration Agreement and then its enforceability.

#### A. Validity of the Agreement

Metro Auto Defendants argue that the Arbitration Agreement is valid, and that Plaintiff's claims are within its scope. (Doc. 20 at 6–8.) Plaintiff does not challenge the Arbitration Agreement's validity but only its enforceability. (*See generally* Doc. 25.) The Court likewise does not take issue with the Arbitration Agreement's validity and finds that Plaintiff's claims are squarely within its scope. The Arbitration Agreement's terms clearly provide that disputes that "arise out of or relate to [Plaintiff's] hiring, employment, or termination of employment" are subject to mandatory arbitration. (Doc. 20-2 at 4.) The employment related claims brought by Plaintiff, (Doc. 16), are clearly within the Arbitration Agreement's scope, and Plaintiff does not contend otherwise. Thus, the Arbitration Agreement is valid and, unless Plaintiff can prove it is unenforceable, arbitration is required. *See* 9 U.S.C. § 2.

#### B. Unconscionability

As explained by the Supreme Court, "[g]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Casarotto*, 517 U.S. at 687 (1996); *AT&T Mobility*, 563

- 4 -

U.S. at 339 (same). Thus, state law—here, Arizona—governs Plaintiff's defenses to enforcement of the contract. "Under Arizona law, either substantive or procedural unconscionability may be raised as a defense to enforcement." *Rizzio v. Surpass Senior Living LLC*, 492 P.3d 1031, 1035 (Ariz. 2021). Here, Plaintiff asserts both. (Doc. 25 at 1–2.) Metro Auto Defendants reply that Plaintiff's arguments are based on California law, or cases interpreting California law, and that Arizona law does not support Plaintiff's unconscionability defense. (Doc. 38 at 2.) The Court agrees with Metro Auto Defendants.

### 1. Procedural Unconscionability

Under Arizona law procedural unconscionability hinges on unfair surprise, and "courts examine factors influencing 'the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible.'" *Wernett v. Serv. Phx., LLC*, No. CIV 09-168-TUC-CKJ, 2009 WL 1955612, at *3 (D. Ariz. July 6, 2009) (quoting *Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 58 (Ariz. 1995)). "The court also considers whether the terms comport with the parties' reasonable expectations." *Adams*, 2017 WL 3315204, at *3 (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 392–99 (Ariz. 1984)). Terms of a contract might run contrary to reasonable expectations when one party "has reason to believe that the other party would not have accepted the agreement if he had known the agreement contained the particular term." *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1050 (Ariz. Ct. App. 2005).

However, "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement." *EEOC v. Cheesecake Factory, Inc.*, No. CV 08-1207-PHX-NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009). Under Arizona law, "[e]ven where terms are non-negotiable or the weaker party does not understand all of them, an agreement will be enforced so long as it is neither unreasonable nor unduly oppressive." *Adams*, 2017 WL 3315204, at *3.

Plaintiff provides essentially three arguments as to why the Arbitration Agreement

is procedural unconscionable: (1) it was an adhesion contract, presented upon starting her employment with Metro Auto, which she had no time to read and no choice but to sign; (2) it required that the arbitration be governed by the AAA's rules, but Metro Auto did not provide those rules; and (3) it required Plaintiff submit a particular form to commence arbitration, but it did not provide said form. (*See* Doc. 25 at 2–5.) Plaintiff's arguments are unpersuasive.

Plaintiff's first argument is factually unsupported and legally misguided. Plaintiff's factual assertion that she was not given "an opportunity to review the documents before signing," (Doc. 25-1 at 3), is contradicted by the plain language of the document she signed, (*see* Doc. 20-2 at 11 (certifying that Plaintiff carefully read and understood the Arbitration Agreement before signing it)). Additionally, Arizona law provides that "although [an] arbitration agreement may be a contract of adhesion in that it [is] presented in a 'take it or leave it' context, it is not [necessarily] procedurally unconscionable." *See Brady v. Universal Tech. Inst. of Arizona, Inc.*, No. CV-09-1044-PHX-FJM, 2009 WL 5128577, at *2 (D. Ariz. Dec. 17, 2009) (finding no procedural unconscionability where "no allegation of concealment or surprise" was made, "[t]he arbitration language [was] clear and conspicuous," and "[t]he waiver of judicial remedies [stood] out in uppercase text"). Here, as in *Brady*, Plaintiff has made no argument of concealment or surprise, and the Arbitration Agreement contained clear and conspicuous language. Moreover, Plaintiff's reliance on *Chavarria v. Ralph's Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013), is misplaces because that case applied California law as Plaintiff's own briefing highlights, (*see* Doc. 25 at 4).

Plaintiff's second argument similarly relies on California law and neglects to cite precedent from this jurisdiction. Under Arizona law, an employer presenting an arbitration agreement without the arbitration rules does not render the agreement procedurally unconscionable. *See O'Bannon v. United Servs. Auto. Ass'n*, No. CV-15-02231-PHX-SRB, 2016 WL 11746053, at *3 (D. Ariz. June 17, 2016) (concluding that "failure to provide a copy of the AAA rules did not make the arbitration provision in this case procedurally unconscionable"). Thus, Metro Auto's failure to include the AAA rules in the Arbitration

Agreement does not render the agreement procedural unconscionable.

Plaintiff's third argument suffers a similar fate. Plaintiff's claim that Defendants "have never provided their required claim form" for initiating arbitration against Metro Auto, (Doc. 25 at 6), is belied by that form's inclusion in the Corrected Declaration of Debora Doyle, (*see* Doc. 38 at 6 (explaining that the omission of the form was a clerical error, which has since been corrected)). Regardless of the form's inclusion, the Arbitration Agreement clearly delineates what was to be on the form and the process for filing a claim. A party initiating arbitration must send written notice, via certified mail, to the other party that "(i) identifies and describes the nature of each claim asserted, (ii) the facts upon which each claim is based, and (iii) the relief or remedy sought." (Doc 20-2 at 6.) Even without the specified form, Plaintiff could have initiated the arbitration process.

Therefore, the Court finds that the Arbitration Agreement is not procedurally unconscionable.

### 2. Substantive Unconsciounability

Under Arizona law, "[s]ubstantive unconscionability addresses 'the actual terms of the contract and . . . the relative fairness of the obligations assumed.'" *Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 769 (Ariz. Ct. App 2014) (quoting *Maxwell*, 907 P.2d at 58). "Relevant factors include whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party, whether there is an overall imbalance in the obligations and rights imposed, and whether there is a significant cost-price disparity." *Id.*

Plaintiff argues that there are four sections of the Arbitration Agreement which are substantively unconscionable. (Doc. 25 at 7–9.) These four sections essentially boil down to two arguments regarding substantive unconscionability. For the first three sections, Plaintiff alleges a "lack of mutuality [which] equals substantive unconscionability." (*Id.* at 7–8.) For the remaining section, Plaintiff alleges that the Arbitration Agreement's confidentiality section is substantively unconscionable. (*Id.* at 8–9.)

Plaintiff's lack of mutuality argument aims at the sections of the Arbitration Agreement governing (1) Metro Auto's ability to unilaterally modify the agreement upon

notice to Plaintiff; (2) Metro Auto's ability to opt out of arbitration for claims that Plaintiff pursues through a government agency, such as the Equal Employment Opportunity Commissions; and (3) Plaintiff's obligation to notify Metro Auto if she retains legal counsel, without a reciprocal duty for Metro Auto. (*Id.* at 7–8.) Metro Auto Defendants reply that mutuality of obligation generally does not apply to arbitration agreements that are supported by consideration. (*See* Doc. 38 at 6–9.) Metro Auto Defendants are correct.

"Federal [circuit] courts addressing the issue [of mutuality of obligation] recently have consistently concluded that arbitration agreements contain adequate consideration, *need not have mutuality* or equivalency of obligation, and therefore are enforceable." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 951 (D. Ariz. 2011) (quoting *Booker v. Robert Half Intern., Inc.*, 315 F.Supp.2d 94, 101 (D.D.C. 2004) and collecting cases); *see also Equal Emp. Opportunity Comm'n v. Cheesecake Factory, Inc.*, No. CV08-1207PHXNVW, 2009 WL 1259359, at *4 (D. Ariz. May 6, 2009) ("It is not necessary, however, to determine whether the Arbitration Agreement is mutually binding because it is part of an at-will employment contract."). Indeed, this Court has upheld arbitration provisions, akin to the those challenged here, against mutuality of obligation challenges. *See, e.g.*, *Pinto v. USAA Ins. Agency Inc. of Texas (FN)*, 275 F. Supp. 3d 1165, 1171 (D. Ariz. 2017) (finding a unliteral modification provision not substantively unconscionable because similar provisions "are not substantively unconscionable under Arizona law when, as with the plaintiff's employment here, employment is on an at-will basis." (quoting *Russ v. United Servs. Auto. Ass'n*, No. CV-16-02787-PHX-PGR, 2017 WL 1953458, at *4 (D. Ariz. May 11, 2017)); *Brady*, 2009 WL 5128577, at *2 (finding no substantive unconscionability even if "one-sided" provision compelled "arbitration of employee claims but exempts from arbitration claims that an employer [was] likely to bring"). Plaintiff has not alleged a lack of consideration—and the Court does not find one—therefore, the Arbitration Agreement's alleged lack of mutuality of obligation does not render it unenforceable.

Plaintiffs' argument regarding the confidentiality section of the Arbitration

Agreement is based on unpersuasive analogies to legal precedent. For example, Plaintiff relies on *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1110 (D. Ariz. 2014), for the proposition that an agreement requiring "arbitration proceedings and/or awards be confidential is substantively unconscionable." (Doc. 25 at 8.) It is true that the *Longnecker* Court found a confidentiality agreement to be substantively unconscionable. 23 F. Supp. 3d at 1110. However, it did so because "the confidentiality provision in the arbitration agreements [kept] only plaintiffs in the dark regarding prior arbitration decisions and only defendants would benefit from [the] provision." *Id.* That is not the case here. A quick comparison of the two provisions illustrates the point.

The provision in *Longnecker* provided as follows:

> [A]ll proceedings under this Policy are private and confidential, unless applicable law provides to the contrary. All parties shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary. The arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality.

*Id.* However, the provision here provides as follows:

> The arbitration, including the hearing and record of the proceeding, are confidential and shall not be open to the public, except (a) to the extent both parties agree otherwise in writing, (b) as may be appropriate in any subsequent proceedings between the parties, or (c) as may otherwise be appropriate in response to a governmental agency or legal process.

(Doc. 20-2 at 9.) On its face the confidentiality provision here does not suffer the same one-sided ailment as the provision in *Longnecker*. Moreover, even if the Court found that it did, it could apply the same remedy as that used in *Longnecker* and exercise the Arbitration Agreement's severability provision to save the remainder of the agreement. *See* 23 F. Supp. 3d at 1111–12. Because there is no substantively unconscionable provision here, however, the Court need not do so.

Therefore, Plaintiff has failed to demonstrate substantive unconscionability, and the Arbitration Agreement must be enforced.

### C. BHA's Motion to Dismiss

Defendant BHA filed a motion to dismiss the case against them, essentially arguing

that Plaintiff has not alleged sufficient facts to establish that BHA was an employer or joint employer of Plaintiff. (*See* Doc. 32.) Plaintiff counters that she has alleged sufficient facts to demonstrate that the relationship between BHA and Metro Auto was that of joint employers. (Doc. 43 at 13–15.) Whether a relationship existed between Plaintiff, Metro Auto Defendants, and Defendant BHA—such that BHA may be held liable to Plaintiff for the alleged wrongs of the Metro Auto Defendants—is not a question for this Court. There is a valid, enforceable arbitration agreement, and this issue falls squarely within its scope.

The Arbitration Agreement is between Plaintiff and the "Company." (Doc. 20-2 at 4.) The Company is defined to include "Metro Auto Auction of Phoenix's parent company or companies, its subsidiary and affiliated entities, its benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates and agents, and any and all successors and assigns of any of them." (*Id.*) The Arbitration Agreement further provides that Plaintiff and the Company "will resolve by arbitration all statutory, contractual and common law claims or controversies, past, present, or future, that arise out of or relate to the Employee's hiring, employment, or termination of employment by the Company." (*Id.*)

As discussed above, Plaintiff's claims are subject to arbitration under the plain language of this agreement. This is true not only for the claims against Metro Auto, but for the claims against the "Company," which includes its agents and affiliates. Plaintiff has alleged that Defendant BHA fits that description. (*See* Doc. 43 at 12–15.) What's more—as Plaintiff correctly notes—Plaintiff's federal employment claims require her to prove a putative employer's status as an element of the claim, which may include joint employers who exercised control over Plaintiff. *See, e.g.*, *EEOC v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) ("Under Title VII, an entity can be held liable for discrimination if it is an "employer" of the plaintiff . . . [and] [t]he law recognizes that two entities may simultaneously share control over the terms and conditions of employment, such that both should be liable for discrimination relating to those terms and conditions."). Thus, to grant Defendant BHA's Motion to Dismiss, the Court would have to determine elements of Plaintiff's claims that are subject to arbitration: namely, who was Plaintiff's

employer. The Court will not do so and, instead, will refer the matter to arbitration along with the rest of Plaintiff's claims.

That Defendant BHA was not a signatory to the Arbitration Agreement does not alter the Court's conclusion because, as the Ninth Circuit has explained, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir.1986)). Moreover, the Court's ruling accords with the "strong public policy, both federal and state, favoring arbitration," *Harrington*, 119 P.3d at 1051, as well as with Arizona's condemnation of dual tracks of dispute resolution, *see e.g.*, *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1371 (Ariz. App. 1994) ("To allow parties to proceed on the dual pathways of arbitration . . . and litigation nullifies the time and expense-saving benefits of arbitration. Allowing parallel tracks also wastes over-burdened judicial resources.").

Therefore, Defendant BHA's Motion to Dismiss will be referred to arbitration.

### IV. CONCLUSION

Accordingly, because there exists a valid, binding Arbitration Agreement with no defenses to its enforcement,

**IT IS ORDERED** granting Metro Auto Defendants' Motion to Compel Arbitration, (Doc. 20).

**IT IS FURTHER ORDERED** referring Defendant BHA's Motion to Dismiss to arbitration, (Doc. 32).

**IT IS FURTHER ORDERED** dismissing this case.

**IT IS FURTHER ORDERED** instructing the Clerk to terminate this case.

Dated this 6th day of January, 2022.

Honorable Susan M. Brnovich
United States District Judge