Isaac P. Hernandez (SBN 025537)
Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
Tel:   602.753.2933
Fax:   855.592.5876
Email: isaac@hdezlawfirm.com
   *Attorney for Sarah Aldrete*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sarah Aldrete,<br><br>    Plaintiff,<br><br>vs.<br><br>Berkshire Hathaway Automotive, LLC a Delaware corporation, Metro Auto Auction, LLC, a Delaware corporation and Raymond Kurz, an individual,<br><br>    Defendants. | Case No.  2:21-CV-622-PHX-SMB<br><br>**PLAINTIFF'S MOTION TO AMEND OR GRANT RELIEF FROM JUDGMENT**<br><br>(dkt. # 49) |

Plaintiff Sarah Aldrete, by her undersigned attorney of record, submits this Motion to (1) Amend the Order/Judgment granting the Defendants' Motion to Compel Arbitration (dkt. #20) (reported at 2022 WL 60544), and dismissing this case filed on January 6, 2022 (dkt. # 49), or in the alternative, to (2) grant relief from that judgment/order.

### I. Introduction and procedural status

Plaintiff Sarah Aldrete ("Aldrete") alleges in her Amended Complaint (dkt. # 16) that she was employed by the Defendants from 2009 until she was fired in 2020. After her termination she filed multiple claims against her former employers

in this action. The Defendants filed a Motion to Compel Arbitration and Dismiss her Amended Complaint, based upon an eight-page single spaced 10 pt. font boilerplate "arbitration agreement" [dkt. #20-2, Exhibit A] that Aldrete signed in a rushed "onboarding process" when she was told to sign a half-dozen documents before she could read them by the Defendants' Human Resources Manager in a meeting lasting no more than seven minutes when she was hired. When she was directed to sign the "arbitration agreement" when it was handed to her, as a brand new employee, she did what she was told to do. The employer never signed the "arbitration agreement" although there was a line for their signature, as well as for Aldrete's. These pertinent *undisputed facts* are set forth in Aldrete's Declaration, filed at dkt. #25-1, and repeated in full in Section III infra.

## II. Applicable rules and standards providing for the relief sought

This Motion is filed pursuant to Federal Rules of Civil Procedure ("FRCP") Rules 59(e), and 60(b)(1):

### A. Standard for Relief under FRCP Rule 59(e)

In *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.,* 282 F.R.D. 216, 220 (D. Ariz., 2012), the Court stated:

> "Rule 59(e) does not list "specific grounds for a motion to amend or alter[;]" hence, "the district court enjoys considerable discretion in granting or denying the motion." *Herron,* 634 F.3d at 1111 (internal quotation marks and citation omitted). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: **(1)** if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously

unavailable evidence; **(3)** if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."

(emphasis added)

### B. Standard for Relief under FRCP Rule 60(b)(1)

FRCP Rule 60(b)(1) states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;

In applying Rule 60(b), Courts weigh "the consequence and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to relitigation of unreviewed disputes." *American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir., 1998).

In *Gila River Ranch, Inc. v. U.S.,* 368 F. 2d 354, 356-357 (9th Cir., 1966), the Ninth Circuit stated:

> "The district court had authority to reopen the remittitur question pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. The argument of Gila that the $125,000 remittitur was and is final is not valid. . . . . . . .
>
> This is the kind of 'mistake' that can be corrected by the district court 'within a reasonable time' pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. As Professor Moore rhetorically asks:
>
> why should not the trial court have the power to correct its own judicial error under 60(b)(1) within a

reasonable time— which, as we subsequently point out should not exceed the time for appeal— and thus avoid the inconvenience and expense of an appeal by the party which the trial court is now convinced should prevail?[3]

Moore further says:

there should be sufficient flexibility in the Rules so that the district court has the power under 60(b)(1) to grant relief for error of law apparent, on motion, made within a reasonable time.[4]

The following cases support Moore's view that under Rule 60(b)(1) the trial judge can, within a reasonable time not exceeding the time for appeal, hold a rehearing and change his decision: McDowell v. Celebrezze, 310 F.2d 43 (5th Cir. 1962); Sleek v. J. C. Penney Co., 292 F.2d 256, 258 (3rd Cir. 1961). Cf. Shay v. Agricultural Stabilization & Conservation State Committee for Arizona, 299 F.2d 516, 524 (9th Cir. 1962)."

*See Utah ex rel. Div. of Forestry, Fire & State Lands v. U.S.*, 528 F. 3d 712, 722-723 (10th Cir., 2008)  ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when "a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) whe[n] the judge has made a substantive mistake of law or fact in the final judgment or order.") ; and see *Inland Concrete Enterprises, Inc.,* 318 F.R.D. 383, 411 (C.D. Cal., 2016) ("There is some persuasive authority that "Rule 60(b)(1) applies to errors by judicial officers as well as parties." *U.S. v. Craft*, 2016 WL 160734, *1 (N.D. Ind. Jan. 13, 2016) (citing *Brandon v. Chicago Board of Ed.*, 143 F.3d 293, 295 (7th Cir. 1998)).")

**3. Since it is undisputed that the Defendants (employers) directed the just-hired Plaintiff to sign the "arbitration agreement" without reading it in a rush of document signings in the "onboarding process", the Court incorrectly concluded her signature proved that she had read and agreed to the "arbitration agreement".**

The following facts are set forth in Aldrete's Response to the Motion to Compel Arbitration in her declaration (dkt. 25-1, paragraphs 4-10) and repeated herein:

> "4. I began my employment with Defendant Metro Auto Auction ["DMAA"] in 2009, in an entry level position earning approximately $9.00 per hour.
>
> 5. Just before commencing my employment with the Company, I was told to meet with Metro's Human Resources Director at the time, Sarah Banks, at the Metro Auto Auction HR Office to sign new hire paperwork.
>
> 6. My meeting with Ms. Banks was very brief and probably lasted no more than approximately five to seven minutes. Ms. Banks and I were the only two people in the meeting.
>
> 7. During the meeting Ms. Banks, presented me with five or six documents that she said I would need to sign in order to begin my employment, including a check deposit form, tax forms, and the Arbitration Agreement. I was not provided an opportunity to review the documents before signing.
>
> 8. Ms. Banks told me to sign where indicated on each form, and then waited next to me telling me where to sign each. She did not explain any of the documents to me, and did not give me any opportunity to read any of them, and as a new hire, I did sign each quickly as I was told to do, not knowing what I was signing.

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

> 9. I was not given a copy of the arbitration agreement (or any of the other documents I was directed to sign by Ms. Banks) and did not know I had signed such a document until many years later.
>
> 10. If I had been allowed to read the DMAA arbitration agreement before signing, I would not have signed it since I would not want to give up any of my legal rights against DMAA if I might have any claims in the future."

Significantly, the Defendants failed to present a declaration from their HR employee Sarah Banks or any evidence from any other source regarding the circumstances of Aldrete's signing the "arbitration agreement", **and has not disputed these facts forth in her declaration**.

The "arbitration agreement" is an eight-page single-spaced ten-point font document that has signature blocks on page 8 for both the employer and the new employee to sign. Dkt. #20-2, Exhibit A. The employers (Defendants) never signed the "arbitration agreement", Id., but Aldrete signed without reading it as directed by the Defendants Human Resources manager, Ms. Banks.

Nonetheless, the Court disregarded Aldrete's argument that the "arbitration agreement" was procedurally unconscionable because she signed on the last page below a paragraph stating that she had read and agreed to it:

> "Plaintiff provides essentially three arguments as to why the Arbitration Agreement is procedural unconscionable: (1) it was an adhesion contract, presented upon starting her employment with Metro Auto, which she had no time to read and no choice but to sign; . . . . . . (*See* Doc. 25 at 2–5.) Plaintiff's arguments are unpersuasive.

> Plaintiff's first argument is factually unsupported and legally misguided. Plaintiff's factual assertion that she was not given "an opportunity to review the documents before signing," (Doc. 25-1 at 3), is contradicted by the plain language of the document she signed, (*see* Doc. 20-2 at 11 (certifying that Plaintiff carefully read and understood the Arbitration Agreement before signing it)). Additionally, Arizona law provides that "although [an] arbitration agreement may be a contract of adhesion in that it [is] presented in a 'take it or leave it' context, it is not [necessarily] procedurally unconscionable." *See Brady v. Universal Tech. Inst. of Arizona, Inc.*, No. CV-09-1044-PHX-FJM, 2009 WL 5128577, at *2 (D. Ariz. Dec. 17, 2009) (finding no procedural unconscionability where "no allegation of concealment or surprise" was made, "[t]he arbitration language [was] clear and conspicuous," and "[t]he waiver of judicial remedies [stood] out in uppercase text"). Here, as in *Brady*, Plaintiff has made no argument of concealment or surprise, and the Arbitration Agreement contained clear and conspicuous language. Moreover, Plaintiff's reliance on *Chavarria v. Ralph's Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013), is misplaces because that case applied California law as Plaintiff's own briefing highlights, (*see* Doc. 25 at 4)."

Order, dkt. # 49, 2022 WL 60544 at 3-4.

The "arbitration agreement" was not only a non-negotiated fine-print adhesion contract where the employer had all the bargaining power and Aldrete as a new hire had none, but in this case, the employer directed its subordinate and new-hire to sign it right now, on the spot, without reading it (along with a half-dozen other new employee documents). It is hard to imagine a more extreme case of procedural unconscionability.

In *Maxwell v. Fidelity Financial Services,* 184 Ariz. 82, 89-90, 907 P.2d 51, 58-59 (1995), the Arizona Supreme Court explained that procedural unconscionability is concerned with unfair surprise; courts examine factors influencing the "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible [and] whether there were alternative sources of supply of the goods in question.

See also *Chavarria v. Ralph's Grocery Co.*, 733 F. 3d 916, 922-933 (9th Cir., 2013), wherein the Ninth Circuit said:

> "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. (citations omitted) Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in "no real negotiation." (citation omitted) Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. (citation omitted). The district court held that Ralphs' arbitration policy was procedurally unconscionable for several reasons. The court found that agreeing to Ralphs' policy was a condition of applying for employment and that the policy was presented on a "take it or leave it" basis with no opportunity for Chavarria to negotiate its terms. . . . . These circumstances are similar to others where we have held agreements to be procedurally unconscionable. In *Davis v. O'Melveny & Myers,* 485 F.3d 1066 (9th Cir.2007), we held that an arbitration agreement was procedurally unconscionable under California law because it was

imposed upon employees as a condition of their continued employment. *Id.* at 1074–75. We explained, "where ... the employee is facing an employer with 'overwhelming bargaining power' who 'drafted the contract and presented it to [the employee] on a take-it-or-leave-it basis,' the clause is procedurally unconscionable." *Id.* at 1075 (quoting *Nagrampa,* 469 F.3d at 1284). Likewise, in *Pokorny v. Quixtar, Inc.,* 601 F.3d 987 (9th Cir.2010), we held that "a contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' "

In the instant case, all of the factors set forth in *Maxwell* and *Chavarria* for procedural unconscionability are present, plus one additional compelling and extreme factor – the newly hired employee was told to sign it without being able to read it before signing and she did as she was told by the H R Manager (to get the job).

When procedural unconscionability is present, "it may be more appropriate to analyze the claims under the doctrines of fraud, misrepresentation, duress, and mistake." *Maxwell supra,* 184 Ariz. at 90, 907 P.2d at 59. "To establish **procedural** unconscionability, Plaintiff must demonstrate . . . . . . . . or that his consent to its terms was obtained under coercion or **duress**." *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 427 (N.D. Cal. 2018)." (emphasis added). *East v. CD Baby Incorporated,* 2019 WL 2423514, 2 (D. Ariz., June 10, 2019), case # 2:19 CV 168 PHX GMS.

When a new employee is required to sign documents before she can read them, and when she is rushed into signing a document that it was among a stack of documents she was asked to sign at once time during an onboarding process, this

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

is procedural unconscionability. *Adams v. Conn Appliances Inc.,* 2017 WL 3315204, 4 (D. Ariz., 2017).  See also, *Phoenix Baptist Hospital & Medical Center, Inc. v. Aiken,* 179 Ariz. 289, 293, 877 P. 2d 1345 , 12349 (App.,  1994), the Court found procedural unconscionability when the plaintiff hurriedly signed the preprinted agreement in order to obtain emergency medical care for his wife, noting the stark inequality of bargaining power between the plaintiff and defendant.

### IV.  The confidentiality requirement in the Defendants' "arbitration agreement" is substantively unconscionable under both case law and the National Labor Relations Act.

The Defendants' arbitration agreement [dkt. #20-2, Exhibit A] has a confidentiality requirement in Section 20.  A requirement that the arbitration proceedings and/or awards be confidential is substantively unconscionable. *Longnecker v. American Express Co.,* 23 F. Supp. 3d 1099, 1110 (D. Ariz., 2014). *Pokorny v. Quixtar, Inc.,* 601 F. 3d 987, 1001-1002 (9th Cir., 2010).  *Ting v. A T & T,* 319 F. 3d 1126, 1151-1152 (9th Cir., 2003). *Larsen v. Citibank FSB,* 871 F. 3d 1295 (11th Cir., 2017).  *Ramos v. Superior Court of San Francisco County,* 28 Cal. App. 5th 1042, 239 Cal. Rptr. 3d 679, 701-702 (2018).  *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 178, 116 Cal. Rptr. 2d 671, 678-679 (2002).

In its Order, the Court did not follow *Longnecker* because it found that the respective confidentiality requirements in that case were different from the confidentiality requirements in the instant case, but a comparison of the two shows no significant difference and both have the same result which effectively prevents workers with employment law claims who are forced into arbitration from sharing information and from learning about the details and results in other similar arbitration cases. This disparity gives employers an advantage that is unreasonably denied to its employees.

Additionally, the National Labor Relations Act governs almost private sector employers in the United States whether or not the employers' employees are union members or engaged in any union formation activities, including the Defendants. 29 U.S.C. 151. 29 U.S.C. 152(2). The question of whether or not United States employers can enforce confidentiality requirements in mandatory arbitration agreements is presently before the National Labor Relations Board for decision. Such confidentiality requirements arguably violate the" concerted action" provision of the NLRA, 29 U.S.C. 158(a)(1) and are substantively unconscionable. See attached Exhibit 1 which is incorporated herein by reference.

## V. California law is persuasive authority because the law of unconscionability of mandatory arbitration agreements is based upon a U.C.C. statute that is identical in both states.

In the Order from which relief is sought herein, the Court repeatedly states that California cases on the unconscionability of mandatory arbitration agreements imposed by employers are not persuasive authority in Arizona. However:

**(A)** The law of unconscionability as a defense to contract enforcement is based upon U.C.C. section 2-302, which has been adopted verbatim in both Arizona as A.R.S. 47-2302, [see e.g. *Batory v. Sears, Roebuck & Co*., 456 F. Supp. 2d. 1137, 1141 (D. Ariz. 2006)], and in California as California Civil Code sec. 1670.5 [see, e.g. *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P. 3d 669, 689 (2000).]

**(B)** Arizona court have often cited California cases on this subject. See, e.g., *Longnecker v. American Express Co.,* 23 F. Supp. 3d 1099, 1110 (D. Ariz., 2014), and *Gullett v. Kindred Nursing Centers West, L.L.C.*, 241 Ariz. 532, 536, ¶ 9, 399 P. 3d 378, 382 (App., 2017).

Hernandez Law Firm, PLC
361 E. Coronado Rd.
Phoenix, Arizona 85004
602.753.2933

### VI.  Conclusion

Based upon the foregoing, Plaintiff Aldrete respectfully requests an order **(1)** vacating the Order filed on January 6, 2022, dkt. # 49; **(2)** denying the Defendants' Motion to Compel Arbitration (dkt. #20); and **(3)** setting an FRCP Rule 16 scheduling conference and Rule 26(f) conference among counsel.

Respectfully submitted this 3rd day of February, 2022.

**Hernandez Law Firm, PLC**

By: /s/ Isaac P. Hernandez
 Isaac P. Hernandez

### CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022, the foregoing document and attached exhibit 1 has been electronically filed with the Clerk of the Court using CM/ECF and sent to all parties of record by operation of the Court's electronic filing system.

/s/ Isaac P. Hernandez